IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA** | * | |
| v. | * | CRIMINAL NO. JKB-15-383 |
| **NICOLAS RAMOS-RAMIREZ,** | * | |
| | * | |
| **Defendant** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Nicolas Ramos-Ramirez ("Defendant") is charged with one count of unauthorized reentry after removal in violation of 8 U.S.C. § 1326(a).[1] Now pending before the Court is Defendant's Motion to Dismiss Indictment. (ECF No. 14.) The issues have been briefed (ECF Nos. 14, 20, and 21), and no hearing is required because no facts are in dispute, *see* Local Rule 207 (D. Md. 2014). For the reasons explained below, Defendant's Motion to Dismiss will be DENIED.

### *I. Background*

Defendant, a citizen of Mexico, entered the United States illegally in 2000. (ECF No. 14–2 at 9.) On June 19, 2010, Defendant was arrested in Queen Anne's County, Maryland, and charged with one count of assault in the second degree, Md. Code Ann., Crim. Law § 3-203; he subsequently pleaded guilty to that charge. (ECF No. 14–3.) On June 21, 2010, while in custody, Defendant was encountered by an immigration enforcement agent with the United States Department of Homeland Security ("DHS") (ECF No. 20 at 2). On November 2, 2010, DHS issued Defendant a Notice to Appear ("NTA") for removal proceedings. (ECF No. 14–4.)

---

[1] The original Indictment issued on July 7, 2015. (ECF No. 10.) A Superceding Indictment issued on August 18, 2015 (ECF No. 15), after Defendant filed his Motion to Dismiss. However, the Superceding Indictment charges Defendant with the same offense as the original Indictment, and the Court will construe Defendant's Motion as applying to both.

The NTA charged that Defendant was subject to removal under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (*Id.*) The document identified a series of rights and obligations, and it stated that Defendant would "be advised by the immigration judge before whom [he] appear[ed] of any relief from removal for which [he] may appear eligible including the privilege of departure voluntarily." (*Id.* at 2.) Notably, the NTA was written entirely in English, although Defendant's primary language is Spanish (ECF No. 14 at 2).

On January 4, 2011, Defendant appeared alongside other detainees via video link before Immigration Judge Howard Rose. (ECF No. 14–2 at 3.) Communicating through a Spanish-language interpreter, Judge Rose advised the detainees of their right to secure counsel (*id.* at 4), their evidentiary rights (*id.* at 5), and their right to review by the Board of Immigration Appeals ("BIA") (*id.* at 5-6). Judge Rose informed the detainees that they could move for a continuance in order to arrange for representation or for any other reason; Defendant declined. (*Id.* at 7-9.)

Proceeding with Defendant's hearing, Judge Rose confirmed that Defendant had entered the country illegally, and he found that Defendant was "subject for removal." (*Id.* at 9.) Judge Rose added that he did not see any relief available to Defendant, and he announced that he would enter an order for Defendant's removal. (*Id.* at 11.) Defendant confirmed that he did not wish to appeal (*id.*), and he was subsequently deported to Mexico (ECF No. 20 at 2).

On April 25, 2014, Defendant was encountered by a DHS deportation officer at the Queen Anne's County Detention Center. (ECF No. 20 at 2-3.) On July 7, 2015, Defendant was indicted in the District of Maryland with a single count of unauthorized reentry after removal in violation of 8 U.S.C. § 1326(a). (ECF No. 10.) Defendant filed a Motion to Dismiss Indictment on August 10, 2015, citing 8 U.S.C. § 1326(d). (ECF No. 14.) The Government filed a Response in Opposition on August 27 (ECF No. 20), and Defendant replied on September 9

(ECF No. 21). No hearing has been conducted as no material fact is in dispute, and the Court is sufficiently informed on the legal issues in light of the excellent legal briefs filed on both sides.

## II. Legal Standard

Under 8 U.S.C. § 1326(a), an alien who has been deported from the United States and who thereafter reenters or attempts reentry is subject to criminal penalties. However, section 1326(d) provides a narrow mechanism by which a defendant may collaterally attack a prior deportation order. If such an attack succeeds, "the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). To execute a section 1326(d) collateral attack, the defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been available to seek relief against the [deportation] order"; (2) the deportation proceedings "improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the deportation order was "fundamentally unfair."

## III. Analysis

### A. Administrative Exhaustion, Judicial Review

To successfully attack an underlying deportation order, a defendant must show that he exhausted all available administrative remedies and was deprived of an opportunity for judicial review. At his January 2011 hearing, Defendant expressly waived the right to appeal Immigration Judge Rose's removal order. (ECF No. 14–2 at 11.) Thus, at first blush, it appears that Defendant cannot satisfy either of the first two prongs of section 1326(d): he did not seek review by the BIA, let alone by any court.

Defendant argues, however, that his waiver of further review was neither knowing nor intelligent and was therefore invalid. (ECF No. 14 at 9.) To support this argument, Defendant contends that he was "never fully advised of the rights and potential relief from deportation that

he was being asked to waive" because (1) the NTA was not provided in Spanish and (2) Judge Rose told him that he did not see any relief from removal available. (*Id.* at 10-12.) In fact, Defendant maintains, he was eligible to apply for voluntary departure as an alternative to deportation, *see* 8 U.S.C. § 1229c; 8 C.F.R. § 1240.26. (*Id.* at 8.) Had Defendant departed voluntarily, he could not thereafter have been indicted under section 1326(a).

The Fourth Circuit has recognized that an "alien's waiver of his appellate rights must be 'knowingly and intelligently made.'" *Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009) (quoting *In re Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1322 (B.I.A. 2000)). Moreover, the exhaustion requirement of section 1326(d) must be excused when an alien's failure to exhaust results from an invalid waiver. *United States v. Ortiz*, 488 F. App'x 717, 718 (4th Cir. 2012).[2]

The Fourth Circuit has never held that failure to advise a deportee of his rights in his native language renders any subsequent appeal waiver invalid. Even so, this Court is skeptical whether a waiver should be considered knowing and intelligent where material terms are not conveyed in a language the waiving party understands. In *United States v. Lopez-Collazo*, Crim. No. ELH-14-00486, 2015 WL 2244094 (D. Md. May 11, 2015), a Spanish-speaking alien received a notice of expedited administrative removal written entirely in English. The notice included a waiver box; although the alien spoke "very little" English, he signed the waiver. *Id.* at *6. Judge Hollander found the alien's waiver invalid and held that such invalidity excused the administrative exhaustion and judicial review requirements of section 1326(d). *Id.* at *13.

Defendant here was better advised of his rights than was Lopez-Collazo, as Defendant's removal hearing was conducted with the aid of an interpreter. That said, the Court need not

---

[2] *See also United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987) (recognizing that where waivers of appeal rights are not "considered or intelligent," aliens are impermissibly "deprived of judicial review").

decide whether Defendant's waiver was valid: as discussed below, Defendant cannot show that his removal order was fundamentally unfair.

### B. *Fundamental Unfairness*

Even if Defendant could satisfy the first two prongs of section 1326(d), he cannot satisfy the third prong. Because the test is in the conjunctive, Defendant's collateral attack must therefore fail.

Fundamental unfairness requires a showing both that the defendant's "due process rights were violated by defects in his underlying deportation proceeding" and that he "suffered prejudice as a result of the defects." *United States v. Wilson*, 316 F.3d 506, 510 (4th Cir. 2003), *abrogated on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006). The *Wilson* court explained that a defendant can only succeed on a due process claim if he first "establish[es] that he had a property or liberty interest at stake." *Id.* (quoting *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002)). In *Wilson*, the BIA had sustained a deportation order without considering the alien's application for discretionary relief under former section 212(c) of the INA. The alien was later indicted for reentry after removal, and he launched a collateral attack on the grounds that the BIA had improperly denied him the opportunity to seek such relief. *Id.* at 509. The Fourth Circuit held that the alien could not show his deportation order was fundamentally unfair, explaining that "section 212(c) does not create an entitlement, but is rather completely discretionary in nature." *Id.* at 510. The alien had no due process right to such relief.

Defendant here is not claiming eligibility under former section 212(c), but he bases his collateral attack on lack of notice regarding voluntary departure, a similarly discretionary mechanism. *See United States v. Shomade*, 125 F.3d 850, 1997 WL 592729, at *2 (4th Cir. 1997) (unpublished table decision) ("The decision to grant a voluntary departure is highly

discretionary . . . ."). The Fourth Circuit has not *explicitly* rejected a due process right to voluntary departure.[3] But this Court cannot announce a right where the Fourth Circuit, in a closely analogous context, has indicated there is none.

Defendant argues, however, that he does not claim he had a right to voluntary departure *per se*—merely a right to have been *informed* (in Spanish) about such relief. (ECP No. 21 at 4.) The Fourth Circuit has not squarely addressed this issue, though "the majority of . . . circuits which have addressed the issue [have] concluded that there is no constitutional right to be informed of the existence of discretionary relief for which a potential deportee might be eligible." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004). Moreover, while *Wilson* held that there is "no due process right in . . . section 212(c) relief," it did so in a case in which the BIA had declined to review the merits of an application for such relief. 316 F.3d at 509. If there is no due process right to relief itself, nor even to review of a request for relief, then presumably there is no due process right to notice about the bare possibility of relief.[4]

Undeterred, Defendant argues in the alternative that Immigration Judge Rose "affirmatively misled" him when he stated that he did "not see any relief from removal available," and that such misstatement violated due process. (ECF No. 21 at 6.) Defendant cites no Fourth Circuit precedent to support his theory that a misstatement pertaining to one possible strand of discretionary relief renders an entire proceeding fundamentally unfair. In fact, in the analogous section 212(c) context, the Fourth Circuit has held that "any error on the part of [an] immigration judge in advising [an alien] of his ineligibility . . . [is] 'not the type of error that

---

[3] However, in *Shomade*, the Fourth Circuit rejected a section 1326 collateral attack where the defendant's sole theory of prejudice was that he *might* have been granted voluntary departure had he attended a hearing. 1997 WL 592729, at *2.

[4] Defendant's claim that his "right to be informed . . . falls squarely within the Fourth Circuit's holding in *El Shami*" is unavailing. *El Shami* held that an alien facing removal proceedings is entitled to (1) notice of the charges, (2) a hearing, and (3) a fair opportunity to be heard. 434 F.3d at 665. The *El Shami* alien never received notice of his hearing, and so he was deprived of any opportunity to contest his charges or seek relief. By contrast, Defendant here participated in his hearing by means of a Spanish interpreter, and he explicitly waived his right to review.

6

provides any basis for collateral attack on the judge's deportation order in a subsequent criminal prosecution.'" *United States v. Suazo-Martinez*, 33 F. App'x 668, 669 (4th Cir. 2002) (quoting *United States v. Vieira-Candelario*, 6 F.3d 12, 15 (1st Cir. 1993)). Moreover, it is far from clear that Judge Rose "affirmatively misled" Defendant: given the judge's wide latitude to grant or deny voluntary departure, it is reasonable to interpret his statement as reflecting his subjective intent, *i.e.*, that there was no relief available *which the judge would consider granting*.

In an effort to bolster his argument, Defendant claims that his case is "materially similar" to two recent cases from this District in which judges have dismissed section 1326 indictments over defective deportation orders. Defendant overstates the similarities. The cases he cites, *Lopez-Collazo*, 2015 WL 2244094, and *United States v. Merino-Hernandez*, 46 F. Supp. 3d 602 (D. Md. 2014), involved aliens deemed amenable to expedited administrative removal for aggravated felony convictions. In both cases, the aliens admitted the charges against them and waived their right to review by signing English-language documents they could not understand. Those aliens enjoyed no meaningful opportunity to hear or be heard, while Defendant participated in a thorough hearing with the assistance of a Spanish interpreter.[5]

Finally, even had Defendant identified a cognizable due process violation, his collateral attack would still fail unless he could show that the violation prejudiced him. *Wilson*, 316 F.3d at 511. "A showing of prejudice requires a defendant to prove a reasonable likelihood that, *but for* the errors complained of, he would not have been deported." *United States v. Cisneros-Garcia*, 159 F. App'x 464, 467 (4th Cir. 2005) (emphasis added). Yet it is well established that voluntary departure "depends upon a balancing of positive and negative equities as to the alien requesting relief." *Lopez-Collazo*, 2015 WL 2244094, at *27. In the analogous section 212(c)

---

[5] Another critical distinction: in both *Lopez-Collazo* and *Merino-Hernandez*, the district judges held that the aliens' convictions were *improperly* classified as aggravated. Thus, they never should have been exposed to expedited removal in the first place, a separate and serious due process concern.

context, the Fourth Circuit has held that an alien with a serious criminal record must demonstrate unusual or outstanding equities to qualify for a favorable exercise of discretion. *Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1259 (4th Cir. 1995). And an alien's "demonstrated disregard" for immigration laws, evidenced by repeated reentries, may cut against relief. *In re Munoz-Gomez*, No. A098 929 292, 2009 WL 3250490, at *1 (BIA Sept. 18, 2009).

Defendant contends that voluntary departure is "granted very liberally," and he cites several BIA cases in which aliens with criminal records were permitted to leave the country voluntarily. (ECF No. 21 at 9-10.) Defendant also presents the affidavit of an immigration law practitioner, Thomas K. Ragland, Esq., who claimed to be "reasonably confident" that an immigration judge would have granted Defendant's request for relief. (ECF No. 21–1 at 2.)

It is impossible to ascertain how Judge Rose would have balanced the equities in Defendant's case. However, Defendant has presented few factors weighing in his favor. He notes simply that he "held a steady job in construction" and provided for his family. (ECF No. 21 at 9.) Given Defendant's assault conviction and his history of unlawful entry, he has not shown a "reasonable likelihood" that he would have been granted the privilege of voluntary departure. And in any event, since Defendant has not identified a due process violation cognizable under Fourth Circuit law, he has no remedy in these proceedings.

## V. Conclusion

For the foregoing reasons, an order shall enter DENYING Defendant's Motion to Dismiss Indictment (ECF No. 14).

DATED this 11th day of September, 2015.

BY THE COURT:

/s/
James K. Bredar
United States District Judge